# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| LANCE REBERGER,<br>    *Plaintiff*,<br>vs.<br>ALL ESP CULINARY PERSONNEL, *et al.*,<br>    *Defendants*. | 3:13-cv-00590-RCJ-VPC<br><br>ORDER |

This prison civil rights action comes before the Court on, *inter alia*, plaintiff's motions (## 12 and 13) for a temporary restraining order and a preliminary injunction.

## *Background*

Plaintiff alleged in the second amended complaint that his meals did not comply with the requirements of a continuing directive by Dr. Michael Koehn, M.D., that he be placed on a double portion cholesterol/fat restricted diet. According to the pleading, Dr. Koehn placed plaintiff on this diet so that he would be able to take his HIV medication with food. Plaintiff alleged that he was provided eggs, whole milk, and lunch meat in violation of the medically required diet. He alleged that he is allergic to egg yolks. With regard to whole milk, he alleged that he instead was supposed to be provided "smart milk," a "non-dairy milk replacer."[1] He further alleged that he was being provided mustard in violation of the diet.[2]

////

---

[1] #10, at 4B (electronic docketing page 8).

[2] *Id.*, at 4D (electronic docketing page 10).

Plaintiff alleged that if he was provided these foods allegedly in violation of Dr. Koehn's medical orders he faced serious and immediate health risks. He alleged that the health risks include, *inter alia*, death from heart attack or stroke and/or infection due to an allegedly compromised immune system. (The allegations appear to reflect that plaintiff is HIV seropositive rather than currently suffering from acute or advanced AIDS with a fully compromised immune system unresponsive to medication.) He maintains that "culinary knows if he were to consume all eggs and whole milk at the same time he would be dead or at the very least paralyzed for life."[3]

Plaintiff further alleged that, following being "poisoned with some kind of chemical, cleaner, rat poison, etc., he cannot eat any meals such as spaghetti, beef stew, sloppy joes, Mexican, mashed potatoes, chili mac, chili, soups, hot cereals, or mashed fruits, and others."[4]

In the motions for a temporary restraining order and preliminary injunctive relief, as thereafter modified by plaintiff's second supplemental reply, plaintiff seeks an order prohibiting "culinary personnel from serving Plaintiff <u>any</u> real eggs, <u>any</u> lunch meat, [and] whole milk – despite whole milk being corrected."[5]

Defendants have submitted a declaration under penalty of perjury by the aforementioned Dr. Michael Koehn, M.D., with their response to the motions.

Dr. Koehn attests, *inter alia*, that: (a) plaintiff currently has a medical order to receive the low cholesterol/low fat diet and is authorized to receive a double portion diet; (b) after plaintiff made complaints that he was allergic to eggs, Dr. Koehn tested plaintiff for allergies to egg products; (c) the results of the allergy testing indicated that plaintiff "did not exhibit an allergy to any egg part, yoke, white or the whole egg;" (d) plaintiff made numerous complaints relating to his contention that he cannot consume eggs and requested that Dr. Koehn order that he not receive eggs but "[t]here is no medical basis to alter the diet currently order[ed]

---

[3] #10, at 4C (electronic docketing page 8).

[4] *Id.*, at 4A (electronic docketing page 7).

[5] #12, at 4, as modified by #26 (with underline emphasis as in the modifying filing).

that Inmate Reberger receive;" and (e) "[t]he medical diet currently ordered to be served to Inmate Reberger does not place him in imminent danger of a heart attack, stroke, or any other health risk factor that is outside of his current medical conditions."[6]

Defendants further have presented a copy of the menu list for prison special diets, including the low fat/cholesterol diet. The menu for that particular special diet includes, *inter alia*, eggs, luncheon meat sandwiches, mustard, and nonfat milk.[7]

Nothing in either Dr. Koehn's declaration or the special diet menu reflects that an inmate on the diet must be provided "smart milk" as a "non-dairy milk replacer." The menu does include "milk replacer" as well as the "non fat milk," but nothing on the menu reflects that an inmate must be given one in lieu of the other for all inmates on the diet.

## *Discussion*

As stated by the Supreme Court with respect to preliminary injunctive relief:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. . . . .
>
> . . . . .
>
> A preliminary injunction is an extraordinary remedy never awarded as of right. . . . . In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." . . . . "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." . . . .

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 & 24 (2008).

In the present case, plaintiff's allegations that he is being provided eggs and lunch meat in violation of Dr. Koehn's medical orders – and at serious peril to his health – are not supported by what the physician states his medical orders actually require and by what the special diet in question requires.

---

[6] #18-4, Ex. C.

[7] See #18-2, Ex. A-1.

Plaintiff urges in his reply that Dr. Koehn always testifies for the defendants for benefit and that his affidavit has many holes and is inaccurate. However, the expressly stated gravamen of plaintiff's complaint is that he is being given food – including eggs and lunch meat – that violates Dr. Koehn's medical orders. If Dr. Koehn denies plaintiff's assertion that his medical orders require that plaintiff not be provided eggs, then plaintiff, at best, cannot establish a substantial likelihood of success in that regard and, at worst, perhaps might start considering his potential exposure to sanctions, including disciplinary sanctions, for making a false statement to a court.[8]

Substantially the same conclusion follows with regard to lunch meat. The required special diet in question clearly includes lunch meat. Plaintiff's self-serving characterization of the lunch meat as "greasy fatty" does not tend to establish a substantial likelihood of success. Nor does such a self-serving pejorative characterization establish a substantial risk that plaintiff will be "dead or at the very least paralyzed for life" in the absence of interlocutory injunctive relief while continuing to be served the lunch meat.[9]

With regard to whole milk, plaintiff acknowledges In his supplemental reply[10] that prison culinary stopped serving him whole milk on June 27, 2014, after being directed to do so by

---

[8] Plaintiff suggests that the Court's screening order establishes a substantial likelihood of success on the merits. The screening order instead establishes only that plaintiff's allegations state a claim for relief under liberal pleading rules under which, *inter alia*, the truth of his factual allegations is assumed for purposes of screening review.

Plaintiff refers also to being served raw eggs despite a compromised immune system. However, he alleged in the complaint, *inter alia*, that he is allergic to any eggs and that he is being served "three types of real eggs almost daily - fried, scrambled, [and] hard boiled eggs." #10, at 4 (electronic docketing page 6). Plaintiff seeks injunctive relief barring prison culinary from serving him "any real eggs," which relief the medical orders that he invoked do not support. To the extent – if any – that plaintiff has been served a raw egg while also being served "three types of real eggs almost daily - fried, scrambled, hard boiled eggs," he can protect himself from alleged potential harm from such an episodic event (*i.e.*, the opposite of "almost daily") without injunctive relief. Meanwhile, plaintiff has not established a basis for the interlocutory injunctive relief that he seeks – prohibiting culinary personnel from "serving Plaintiff any real eggs."

[9] Such hyperbole does not establish that irreparable injury is likely in the absence of an injunction. A plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction," not merely that there is some possibility of irreparable injury. *Winter*, 555 U.S. at 22 (emphasis in original).

[10] #25, at 3. Plaintiff may not submit multiple replies in support of a motion, regardless of the overall time period for filing a reply. Once he files a reply, he may not file supplemental replies without leave.

a letter. Plaintiff's request for injunctive relief with regard to being served whole milk therefore is moot.

Plaintiff accordingly has failed to present a viable basis for interlocutory injunctive relief or for further proceedings in regard to same. Plaintiff's request for injunctive relief barring culinary from serving him "<u>any</u> real eggs" and "<u>any</u> lunch meat" is not supported by the medical orders by the physician to whom plaintiff expressly referred in his complaint. Plaintiff's request for injunctive relief as to whole milk is moot, with plaintiff expressly acknowledging that the issue has been corrected. Federal courts otherwise do not oversee prison menu selections.[11]

IT THEREFORE IS ORDERED that plaintiff's motions (## 12 and 13) for a temporary restraining order and a preliminary injunction are DENIED.

IT FURTHER IS ORDERED that defendants' motion (#19) to file exhibits under seal is GRANTED.

IT FURTHER IS ORDERED that no further motions will be entertained during the currently pending stay for mediation. The Court excepted the current motions from the stay to address whether interlocutory injunctive relief was warranted. It is not. The stay now applies in all respects. See #14, at 4.

Nothing herein precludes the initiation of prison disciplinary proceedings under MJ48 for making false statements to a court.

DATED: July 29, 2014.

_____
ROBERT C. JONES
United States District Judge

---

[11] Plaintiff dropped his request for injunctive relief as to cheese in his second supplemental reply. It appears to be undisputed that cheese is not included in the special diet. It further appears, however, that plaintiff's suggestion that he will be "dead or at the very least paralyzed for life" if he *arguendo* is provided cheese in error prior to a judgment herein are based upon hyperbole and generalized health risks, even for an individual with high cholesterol. Moreover, plaintiff is not subjected to irreparable injury by, for example, *arguendo* having to remove a piece of cheese from a sandwich.