**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| LANCE REBERGER,<br><br>  Plaintiff,<br><br> v.<br><br>ALL ESP CULINARY PERSONNEL, *et al.*,<br><br>  Defendants. | 3:13-cv-00590-RCJ-VPC<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#75), plaintiff's opposition (#97), and defendants' reply (#117). Because defendants' reply contains new arguments not raised in their motion, the court also considers plaintiff's surreply (#145). Having thoroughly reviewed the record and papers, the court recommends that defendants' motion be granted in its entirety.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Lance Reberger ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at Ely State Prison ("ESP") in Ely, Nevada. Acting *pro se*, and as permitted by this court's screening order (#14), plaintiff asserts two civil rights claims against ESP and NDOC officials. First, against Mary Boni ("Boni"), Charles Fillman ("Fillman"), William Shaw ("Shaw"), Drugh Waggener ("Waggener"), April Witter ("Witter"), Senior C/O Bowman ("Bowman"), and eight unidentified ESP culinary staff members, plaintiff alleges deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (#10 at 2, 4–4E, 6.) Second, plaintiff brings a claim under the First Amendment against all defendants, excepting Boni, for actions taken in retaliation for plaintiff's filing of grievances. (*Id.* at 2, 4–4E.)

1       Plaintiff's claims concern the food he has been served during his incarceration at ESP. On
2  September 21, 2012, plaintiff was placed on a low fat diet with double portions. (#77, Ex. A at 1.)
3  Plaintiff's diet was renewed and slightly revised on September 5, 2013, such that plaintiff was to
4  receive double portions of low sodium, cholesterol/fat restricted meals, as well as a P.M. snack. (*Id.*,
5  Ex. A at 2.) The diet was deemed an essential medical requirement due to plaintiff's compromised
6  immune system. (*Id.*) Plaintiff is HIV positive. (#10 at 4.)

7       Plaintiff alleges that the ESP culinary personnel serve him eggs, whole milk, and "fatty
8  greasy" lunch meat, and that such foods are contrary to his low fat and low cholesterol dietary
9  requirements. (*Id.* at 4B, 4D.) As a result, he alleges to have suffered a variety of harms. According
10 to plaintiff, whole milk, eggs, and lunch meat are high in fat and cholesterol, and will "easily cause
11 [him] heart attacks or strokes due to fat content of the food that builds around [his] heart and
12 organs." (*Id.* at 4B.) The adverse health impacts are already evident, he argues, because of an
13 August 2014 incident in which he alleges to have lost consciousness, had a "massive seizure coupled
14 with a stroke," and suffered substantial pain and memory loss. (#97 at 4–5.) Plaintiff further
15 contends that he is allergic to "real eggs/egg yolks" (*id.* at 7); that the ESP culinary staff "refuse to
16 thoroughly cook the food," and he has been served raw eggs "countless times" (*id.* at 14); that eggs
17 put him in "imminent danger" of hospitalization or death, as they cause infections in individuals with
18 compromised immune systems (*id.*; #10 at 4A); and that drinking whole milk each morning puts him
19 in "severe pain," and could cause his organs to shut down, HIV infections, heart attacks, and strokes
20 (#10 at 4C).

21      Plaintiff sent numerous kites regarding his food issues to the ESP culinary staff, which
22 includes defendants Fillman, Shaw, Waggener, Witter, and Bowman. (*Id.* at 2–2A, 4A.) Plaintiff
23 also sent "letters of complaint" to defendant Boni, a Registered Dietician under contract with
24 NDOC. (*Id.* at 4A; #117, Ex. C at 1.) Rather than provide him with diet-appropriate meals, plaintiff
25 contends that defendants have deliberately ignored his concerns and the medical consequences. (#10
26 at 4B.) In addition, he alleges that the culinary staff retaliated against the grievances by sending him

27

-2-

1 half-rations, sending him the wrong food, mixing his food together, and poisoning him. (*Id.* at 4A–4C.)

## II.   LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences

1 arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations and quotations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. The Ninth Circuit follows a "policy of liberal construction in favor of *pro se* litigants." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998). Accordingly, for purposes of opposing summary judgment, a reviewing court will consider as evidence the allegations a *pro se* litigant offers in motions and pleadings, where the allegations are based on personal knowledge and set forth facts that would be admissible into evidence, and where the litigant attested under penalty of perjury that they are true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). Nevertheless, mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## III.   DISCUSSION

**A.   Civil Rights Claims Under § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights," *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as

the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

To state a claim under § 1983, a plaintiff must allege facts showing (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. A causal connection must be established, by which the state actor performed an affirmative act, participated in another's affirmative act, or failed to perform an affirmative act that he or she was legally obligated to perform, and so caused the complained-of constitutional deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**B.     Eighth Amendment Deliberate Indifference Claims**

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical

1  condition that significantly affects an individual's daily activities; or the existence of chronic and
2  substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

3  Second, the subjective element considers the defendant's state of mind, the extent of care
4  provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a
5  prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical
6  treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted).
7  However, a prison official may only be held liable if he or she "knows of and disregards an
8  excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004).
9  The defendant prison official must therefore have actual knowledge from which he or she can infer
10 that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An
11 accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*,
12 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one
13 end and purpose or knowledge at the other . . . ." *Farmer*, 511 U.S. at 836. Accordingly, the
14 defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal
15 quotation omitted).

16 Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that
17 prisoners will have unqualified access to health care . . . ." *Hudson v. McMillian*, 503 U.S. 1, 9
18 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or
19 prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391
20 F.3d at 1058. Only where the prison official's "'chosen course of treatment was medically
21 unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk
22 to the prisoner's health,'" will the treatment decision be found constitutionally infirm. *Id.* (quoting
23 *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm
24 treatment decisions result in harm to the plaintiff—though the harm need not be substantial—does
25 Eighth Amendment liability arise. *Jett*, 439 F.3d at 1096.

26
27

### 1.     Claims Against ESP Culinary Personnel

Plaintiff alleges that the ESP culinary staff served him foods contrary to his prescribed dietary restrictions, or that are otherwise unsafe, despite his frequent complaints.  (#10 at 4–4B.) While it is undisputed that plaintiff was prescribed a low fat/low cholesterol diet due to a serious medical need, defendants counter that plaintiff fails to raise a genuine issue of material fact with respect to the subjective standard of a deliberate indifference claim.  (#117 at 2.)  More specifically, they maintain that lunch meat and eggs are consistent with plaintiff's low fat/low cholesterol diet; that there is no evidence that ESP inmates are served whole milk or undercooked eggs; that plaintiff does not have an egg allergy; and that there is no medical basis for plaintiff's claim that he was hospitalized due to his diet.  (*Id.* at 2–6, 8–10.)  In short, no constitutional deprivation occurred.

Upon review of the record, the court agrees that plaintiff has not presented evidence from which a reasonable jury could find that plaintiff was, in fact, served food which did not comport with his dietary restrictions, that defendants had the requisite state of mind to support a deliberate indifference claim, or that plaintiff was harmed by the meals he was served.

First, the ESP low fat/low cholesterol diet menu regularly includes eggs and lunch meat in its meals.  (#75, Ex. B-1.)  Defendant Boni, a Registered Dietician who contracts with NDOC, reviewed the menu and found it to be consistent with federal standards and "nutritionally sound."  (#117, Ex. C at 1–2.)  Contrary to plaintiff's assertions, recent research indicates that the cholesterol found in eggs is not as detrimental as previously thought, and the United States Department of Agriculture's guidelines regarding low fat and low cholesterol diets no longer restrict the number of eggs to be consumed.  (*Id.*, Ex. C at 3; #119, Ex. A at 3.)  A difference of opinion regarding treatment between an inmate and the prison medical professionals does not give rise to a deliberate indifference claim. *Colwell*, 763 F.3d at 1068.  Further, upon analysis of the meats served to inmates, Boni found them to be "very lean, with little fat and/or cholesterol."  (#117, Ex. C at 3.)  Accordingly, to the extent that plaintiff claims defendants interfered with or denied him necessary medical treatment by serving eggs and lunch meat, his argument is without merit.

-7-

Plaintiff contends that eggs pose a host of additional risks, but these too lack factual support. With regard to raw eggs, his claim appears to turn on a difference in culinary standards. Fillman, Witter, and Waggener attest that eggs are checked by staff and they have never seen raw eggs served at ESP. (#117, Ex. B at 3, Ex. D at 3, Ex. E at 2.) Plaintiff, in turn, describes "slimy" and "mushy" fried eggs, and scrambled eggs that "you can run a fork through . . . like chili" (#145 at 15); he may prefer his eggs prepared another way, but it seems clear that the eggs are not uncooked as plaintiff's use of the word "raw" would suggest. Further, plaintiff is not allergic to eggs. In response to plaintiff's complaints, Dr. Michael Koehn, an ESP physician, ordered that plaintiff be tested for allergies to egg yolks, egg whites, and whole eggs. (#75, Ex. C at 2.) On May 15, 2014, Dr. Koehn reviewed the results, which clearly show that plaintiff has no allergy to any part of the egg. (#119, Ex. A at 2, Ex. A-2.) Plaintiff was kited the same day. (#77, Ex. A at 10.) Although the photocopy of the kite that appears in the record is of poor quality, plaintiff's speculation that the copy was fabricated or altered, or that Dr. Koehn misread the allergy test, is baseless. (*See* #97 at 8–9; #145 at 7–8.) Finally, the record contains no medical or scientific support for the notion that plaintiff's HIV positive status renders him unable to eat eggs. (#10 at 4–4A; #97 at 5, 14.)

Defendants have also offered evidence that the ESP culinary does not serve whole milk, contrary to plaintiff's assertions. As designated by the ESP meals menu, inmates on the low fat/low cholesterol diet receive non-fat milk or milk replacer each morning. (#75, Ex. B-1.) Other inmates receive lactose-free milk or soy milk, but whole milk is altogether absent. (*Id.*) Similarly, Waggener recalls serving just low- or non-fat powdered milk while working in the ESP culinary. (#117, Ex. E at 2.) Nevertheless, plaintiff claims to receive whole milk each morning (#10 4B–4C), and submits a declaration from Don Allison ("Allison"), a fellow inmate and "an experienced dairy man of over 20 years" who fed his calves with powdered whole milk. (#145, ex. J at 1.) Upon a thorough examination of a milk packet provided by plaintiff, Allison purportedly found the packet to contain whole milk. (*Id.*) Still, assuming *arguendo* Allison is correct, plaintiff fails to explain how defendants—none of whom appear to be seasoned dairy farmers—could have reached a similar conclusion. Allison's statement suggests that the packets were not labeled as whole milk, and

plaintiff presents no evidence to the contrary. Defendants must be aware of a risk of harm to be held liable under the Eighth Amendment. *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187–88 (9th Cir. 2002).

Finally, the court acknowledges that a high fat or high cholesterol diet may have adverse health effects in the long-term, but finds no facts in the record to substantiate plaintiff's claim that eating eggs, whole milk, or lunch meat has caused him a concrete harm to date. Plaintiff credits the ESP meals for the stroke and seizure he allegedly experienced in August 2014. (#97 at 26–27; #145 at 10–11, 26). Dr. Koehn opined, however, that plaintiff's "simulated or actually sustained seizure like symptoms" following a period of severe, self-inflicted dehydration. (#119, Ex. A at 4.) Plaintiff presented no evidence to support his allegations and, as a lay person, his belief as to the cause of his ailments—no matter how fervent—cannot alone establish causation. A plaintiff in a § 1983 case must demonstrate that the defendants' conduct was the cause of the alleged constitutional violation. *Duffy*, 588 F.2d at 743. In view of Dr. Koehn's uncontradicted declaration, plaintiff fails to meet this burden.

**2.     Claim Against Mary Boni**

In April and May of 2014, Plaintiff wrote Boni two letters to inform her that he was being served eggs, whole milk, and lunch meat, and request that she take corrective action. (#145 at Ex. H-1, Ex. H-2.) The Chief of Purchasing/Inmate Services responded to each letter, and may have sent Boni copies, but no changes were made to plaintiff's diet. (*Id.* at Ex. I-1, Ex. I-2.) Plaintiff alleges that Boni "refuse[d] to act as required by her job and refuses to take personal responsibility." (#10 at 4D.)

Boni attests in her sworn declaration that her role at NDOC is to analyze the nutritional adequacy of the prison diet menus and give to suggestions where necessary. (#117, Ex. C at 2.) She maintains that NDOC's menus meet the minimum standards set by the Food and Nutrition Board, Institute of Medicine, and the National Academies, and are "nutritionally sound." (*Id.*) Still, "decisions for actual food served at the facilities are the responsibilities [sic] of NDOC." (*Id.*)

1  Further, Boni denies having personal knowledge of plaintiff or his medical condition prior to the
2  commencement of this case. (*Id.*)

3  Liability will only arise under § 1983 upon a showing that the defendant personally
4  participated in the constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
5  There is no evidence to suggest that it was within Boni's authority to review, approve, or change an
6  individual prisoner's diet, or that Boni supervised those officials who had such authority. To the
7  contrary, plaintiff was told that the ESP culinary staff is responsible for following the diet menus,
8  and instructed to schedule an appointment with the ESP doctor if he felt an alternative diet was
9  necessary. (#145 at Ex. I-1, Ex. I-2.) As plaintiff's claim against Boni cannot be predicated on
10 decisions she did not make, it must fail.

11 **C.      First Amendment Retaliation Claims**

12 It is well-established that prisoners may seek redress for retaliatory conduct by prison
13 officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*,
14 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances
15 against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108,
16 1114 (9th Cir. 2012). Within the prison context, a retaliation claim has five elements: (1) a state
17 actor took some adverse action against the inmate (2) because of (3) the inmate's protected First
18 Amendment conduct, and that the action (4) chilled the inmate's exercise of his First Amendment
19 rights and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–
20 68. If the plaintiff fails to allege that the retaliation had a chilling effect, he or she may still state a
21 claim by alleging some other harm. *Id.* at 568 n.11.

22 Here, plaintiff alleges that the ESP culinary staff sent him half-rations, sent him the wrong
23 food, mixed his food together, and contaminated his food "with unknown substances of chemicals,
24 cleaners, some poison, body fluids, etc.," and that they did so in response to the grievances he filed
25 in 2013 and 2014. (#10 at 4A, 4C; #145 at 27.) The court must consider whether the record, when
26 viewed in the light most favorable to plaintiff, contains evidence from which a reasonable jury could
27
-10-

conclude that defendants performed the adverse actions alleged. Defendants argue that it does not (#117 at 9), and the court agrees.

The record includes sworn declarations from Fillman, Witter, and Waggener, each of whom was assigned to work in the ESP culinary during the period at issue. (*Id.*, Ex. B at 2, Ex. D at 2, Ex. E at 2.) Therein defendants describe the process through which prisoner meal trays are assembled. Trays intended for inmates with prescribed medical diets are prepared separately from mainline meal trays. (*Id.*, Ex. D at 2.) Each medical diet tray is stocked with the items for the approved diet, covered with a lid, and labeled with the diet type and a housing unit number. (*Id.*, Ex. B at 3, Ex. D at 2, Ex. E at 2.) Trays are not marked with the inmates' names. (*Id.*) Once completed, they are loaded onto carts and sent to the units. (*Id.*, Ex. D at 2.) The purpose of the blind assembly process is to "facilitate[] the safety and security goals of the institution, assuring that an inmate is not retaliated against with respect to the food being served to them and [to] restrict[] the [possibility] of an inmate's diet tray being altered." (*Id.,* Ex. B at 4.) Defendants deny tampering with plaintiff's food trays, poisoning his food, or taking any other retaliatory actions. (*Id.*, Ex. B at 4, Ex. D at 3, Ex. E at 3.)

In response, plaintiff accuses defendants of lying. (*See* #145 at 16, 19, 20.) He also claims to have spoken with an ESP culinary worker who "knew all the diet people by name and remembered plaintiff's name," but fails to provide the worker's name, the date of their conversation, or any other pertinent details. (*Id.* at 16.) Plaintiff's complaint, opposition, and surreply are further devoid of any details as to how many instances of retaliation occurred, or when in 2013 or 2014 they took place. (*See id.*) Plaintiff's uncorroborated and vague allegations cannot carry plaintiff's burden in opposing defendants' sworn declarations at the summary judgment stage. *See Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (noting that a "party opposing summary judgment may not simply question the credibility of the movement"). Accordingly, because plaintiff has not shown that a material dispute exists as to whether defendants performed the adverse actions alleged, summary adjudication in defendants' favor is appropriate.

## VI. CONCLUSION

Based upon the foregoing, the court recommends that defendants' motion for summary judgment be granted in its entirety. The record forecloses a reasonable jury from finding any dispute of fact by which plaintiff could prevail.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VII. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#75) be **GRANTED** in its entirety;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED:** November 18, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**